UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAMAL KORAITEM,<br><br>Plaintiff,<br><br>v.<br><br>MICROCHIP TECHNOLOGY, INC.,<br><br>Defendant. | Case No.  5:24-cv-00462-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 73 |

Defendant Microchip Technology, Inc., ("Defendant") terminated Plaintiff Kamal Koraitem ("Plaintiff") because of his social media posts regarding the Israel-Palestine conflict. Separate Statement of Facts ("Fact" or "Pl.'s Resp. to Fact"), ECF No. 104-1.[1] Plaintiff alleges that his termination violates California Labor Code §§ 1101, 1102, and 98.6; California Fair Employment and Housing Act ("FEHA") § 12940; and California common law wrongful termination in violation of public policy. Compl., ECF No. 1-1. Before the Court is Defendant's motion for summary judgment on all claims. Mot., ECF No. 73. This motion is fully briefed. Opp'n, ECF No. 100; Reply, ECF No. 104.

After carefully reviewing the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.

---

[1] When citing to the Separate Statement of Facts throughout this Order, the Court references the evidence cited therein.

Case No.: 5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
1

## I. BACKGROUND

Defendant hired Plaintiff in 2016 as a Senior Manager of Defendant's Applications Engineering Group. Fact No. 1. Between October 7 and October 10, 2023, Plaintiff made several public social media posts and sent one email regarding the Israel-Palestine conflict that he alleges ultimately led to his termination.

In the early morning of October 7, 2023,[2] Plaintiff posted: "October 7 2023 is a big day!" *See* Fact No. 8.[3] The parties refer to this as the "big day" post. Plaintiff testified that news coverage of the October 7 attack evolved throughout the day, and he made this post only after receiving information that the barricade between Israel and Palestine had been breached, but before knowing the details of Hamas's responsibility in the breach and the violence that followed. Pl.'s Resp. to Fact No. 8. Plaintiff believed the breach of the barricade was akin to the fall of the Berlin wall and an opportunity for more peaceful relations. *Id.* In the days following, Plaintiff made several additional posts at issue, including: statistics comparing the Israeli and Palestinian death tolls; a post criticizing the concept of Zionism; a post mourning the death of Palestinian children; a historical regional map from the 1940s showing former Palestinian territory; and commentary on the concept of an "unprovoked" attack. Plaintiff made all posts outside of Defendant's premise and while off duty. *Id.* None of Defendant's employees followed Plaintiff's social media account, and he did not send his posts to any of Defendant's employees. Pl.'s Resp. to Fact No. 11.

Plaintiff also alleges that an email he sent to then-CEO Ganesh Moorthy contributed to his termination. On October 8, Moorthy sent a company-wide email conveying his opinion that Israel's bombing of Palestine following the October 7 attack was "justified and necessary." Fact No. 14. On October 10, Moorthy sent another email recognizing the bombings and deaths of

---

[2] The Court assumes the reader is aware of the relevant events of October 7, 2023, and the days that followed, in Israel and Palestine.
[3] The Court does not incorporate Defendant's characterization of this statement or other legal conclusions in the Statement of Facts. The Court interprets all facts in the light most favorable to Plaintiff and draws all reasonable inferences in Plaintiff's favor for purposes of this Order. *See Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Palestinians in the days following the October 7 attack and expressing sympathy for civilians in both Israel and Palestine that were caught in the crossfire.[4]  Fact No. 16.  In response to the October 10 email, and two days prior to being terminated, Plaintiff sent an email to Moorthy essentially expressing his gratitude for the recognition of the suffering on both sides of the conflict.  Fact No. 17.  Plaintiff also forwarded his response to his supervisor, Rob Stein.  Fact No. 19.  Plaintiff characterizes this email as communicating his disapproval of Moorthy's prior October 8 email and complaining about discrimination in the workplace.  *See id*.

As for Plaintiff's social media activity, Defendant became aware of Plaintiff's posts when it received employee complaints.  *See* Fact No. 12; Pl.'s Resp. to Fact No. 12.  The complaints began with Mr. Naiman, an indirect subordinate of Plaintiff.  Though he has not testified why he searched for Plaintiff's account, Naiman later told Lauren Carr, Defendant's Vice President of Global Human Resources, that he and his wife were "uncomfortable" because Plaintiff may have been "anti-Israel," and they were "afraid" of him because he is Muslim.  *See* Pl.'s Resp. to Fact No. 23.  After finding Plaintiff's account, Naiman sent screenshots of Plaintiff's posts to other coworkers in Israel.  *See* Pl. Resp. to Fact No. 12.  These employees all submitted complaints to Defendant on October 10, 2023.  *Id.*  That same day, Stein told Plaintiff to delete all "inappropriate/questionable content related to the recent Middle East conflict" and to "take the necessary steps to ensure no additional postings of this nature occur in the future."  Pl.'s Resp. to Fact No. 39.  Stein later testified that he considered any content related to the Middle East conflict "inappropriate" if "other employees at Microchip found it to be harassing."  *Id.*  Plaintiff complied and deleted all the posts described above that day.  *See* Pl.'s Resp. to Fact No. 45.

Defendant subsequently terminated Plaintiff on October 12.  Fact No. 21.  Stein informed Defendant that he was terminated pursuant to Defendant's social media policy that prohibited "any conduct that adversely affects job performance or otherwise adversely affects Microchip

---

[4] Employees subsequently submitted complaints about Moorthy expressing sympathy for Palestinians, and Moorthy privately reiterated his opinion to them as expressed in the October 8 email.  Pl.'s Resp. to Fact No. 23.

Case No.: 5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
3

employees" and "any post that subjects Microchip to the risk of having to legally defend any claim by a third party." Pl.'s Resp. to Fact No. 39.[5] The ultimate decision maker, Carr, concluded that four of Plaintiff's posts violated Defendant's policies: (1) the "big day" post; (2) the 1940s map; (3) the post mourning deceased Palestinian children; and (4) a picture of a teenager blindfolded and held in Israeli military custody. Pl.'s Resp. to Fact No. 26. Defendant's employees and Carr believed Plaintiff's posts to be "political." Additional Fact No. 1. Internal conversations leading up to Plaintiff's termination also included discussions about Plaintiff being Muslim and Defendant's Human Resources Manager describing his posts as "supporting or transmitting he is with the Palestinian people." Pl.'s Resp. to Fact No 23. Carr further testified that she supported Israel's bombing of Palestine, *id.*, and according to Plaintiff,[6] Carr understood Moorthy to share her "pro-Israel" views, Opp'n 16.

Following Defendant's termination, on October 20, 2023, Defendant revised its social media policy to add sections titled "Social Media Activities Can Impact Employment" and "Management Is Held to a Higher Standard." Additional Fact No. 5. The revision expanded disciplinary language and added new restrictions specific to managers like Plaintiff, including discouraging "publicly accessible social media accounts, other than LinkedIn." *Id.*

## II. LEGAL STANDARD

Courts may grant summary judgment on a claim or defense only if the moving party shows "there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute when enough evidence exists in the record for a reasonable fact finder to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material when it might affect the outcome of the case. *Id.*

---

[5] Stein later testified that Plaintiff was terminated "due to safety and security concerns." Pl.'s Resp. to Fact No. 39. Carr also later testified that Plaintiff was terminated for a violation of Defendant's social media and harassment policies, as well as "other factors." *Id.*
[6] The Court does not find testimony regarding Carr's understanding of Moorthy's views in the deposition transcript excerpts Plaintiff provided to the Court and therefore does not consider Plaintiff's representation as evidence.

Case No.: 5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
4

When evaluating whether a moving party has satisfied this standard, courts view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). This moving party bears the initial burden of showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, the opposing party must produce affirmative evidence "from which a jury could find in [its] favor" in order to defeat summary judgment. *F. T. C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

## III.  DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims for violations of Labor Code §§ 1101, 1102; Labor Code § 98.6; California Fair Employment and Housing Act ("FEHA") § 12940; and California common law wrongful termination in violation of public policy. The Court will examine each in turn.

### A.  Labor Code §§ 1101, 1102

Labor Code § 1101, in relevant part, prevents employers from maintaining a rule, regulation, or policy that controls or directs, or tends to control or direct, the political activities of employees. Cal. Labor Code § 1101. Section 1102 prevents employers from coercing or influencing employees, through threat of discharge or loss of employment, to follow or refrain from following any course of political action or activity. *Id.* § 1102.

Defendant raises three primary arguments as to why Plaintiff's claims under these sections fail: (1) the Labor Code does not protect "offensive" conduct; (2) Defendant has no policy that would offend § 1101; and (3) there is no evidence of viewpoint discrimination in violation of § 1102.

#### 1.  Protections for "Offensive" Political Conduct

First, Defendant argues there are no protections under §§ 1101 or 1102 for "offensive"[7] political conduct. Though there is no such express exception in the Labor Code, Defendant urges

---

[7] Defendant also occasionally uses words such as "harassing" or "threatening" interchangeably but most consistently appears to define its exception as applying to "offensive" conduct.

Case No.: 5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
5

1   the Court to find an implied exception because any other interpretation "would lead to absurd

2   consequences." *Torres v. Parkhouse Tire Serv., Inc.*, 26 Cal. 4th 995, 1003 (2001) (citation

3   omitted). One such "absurd consequence" Defendant proffers includes potential liability for

4   hostile work environment claims under Title VII. Mot. 5–6. Defendant also references FEHA,

5   which it contends includes a similar exception to its prohibition on discrimination to avoid "absurd

6   consequences." *Id.* For example, though it is unlawful for employers to discharge an employee

7   because of that employee's disability, Defendant highlights that employers can still discharge an

8   employee with a physical or mental disability if the employee is unable to perform essential job

9   duties in a manner that would not endanger the employee's health or safety or the health or safety

10  of others. Defendant argues the Court must similarly exclude from the Labor Code's protections

11  an employee's conduct that could endanger employee wellbeing in the workplace.

12      Defendant's arguments that there is such an exception in the Labor Code are unpersuasive.

13  Defendant cites to no authority to support this contention, and California and federal courts have

14  repeatedly upheld employees' rights to political expression even when that expression generates

15  workplace complaints or discomfort. *See, e.g., Surdak v. DXC Tech.*, No. 5:22-CV-00921-SB-

16  KK, 2022 WL 18142545, at *7 (C.D. Cal. Dec. 20, 2022) (citing *Nava v. Safeway Inc.*, No.

17  F063775, 2013 WL 3961328, at *8 (Cal. Ct. App. July 31, 2013)). Similarly, Defendant cites no

18  authority to show that potential liability for a Title VII "hostile work environment" claim is a

19  defense, or exception, to Plaintiff's Labor Code claims. And the fact that FEHA has an express

20  exception contemplated by the legislature does not support an argument that the Court should

21  imply a similar exception to the Labor Code.

22      Even if Defendant did convince the Court to imply an exception for "offensive" behavior,

23  there are disputed facts regarding whether Plaintiff's posts would fall into Defendant's exception.

24  Though Defendant does not offer the Court a definition of "offensive," or "harassing" or

25  "threatening," it focuses much of its argument on the definition of a "hostile work environment"

26  under Title VII. To establish a hostile work environment under Title VII, employees would need

27  to show that "a reasonable person with the same fundamental characteristics" would find the

28  Case No.: 5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
6

conduct "objectively hostile." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995), *as amended* (Apr. 24, 1995). Defendant argues that a reasonable person with the same fundamental characteristics as its employees in Israel would have found Plaintiff's posts "objectively hostile." Mot. 6.

But this presents a dispute of fact. While Defendant contends that Plaintiff's "big day" post could only be understood "as supporting Hamas and the elimination of the State of Israel," Mot. 6, Plaintiff presents evidence that this post was made in the early hours of the day before details of the attack were widely known. Plaintiff testified that he made this post just after seeing on social media that a barricade between Isreal and Gaza had been breached, but before he saw news break that the breach had been led by Hamas and was followed by a violent attack. Though the parties dispute the relevance of Plaintiff's intent, the fact that this post was made in the early morning of October 7, as Plaintiff testified that news outlets were still uncovering and reporting on emerging details of the barricade breach and the subsequent attack, is evidence that creates a triable issue of fact. Further, though Defendant cites to employee complaints as evidence that the posts were "objectively hostile," Plaintiff also presents evidence to suggest that some of these employees' opinions may have been influenced at least in part by the fact that Plaintiff is Muslim. And the other posts Defendant considered when deciding to terminate Plaintiff present additional disputes. When viewing the facts in the light most favorable to Plaintiff, a reasonable person could perceive the remaining posts—comparing the Israeli and Palestinian death tolls, depicting a historical map of Palestinian territory prior to the creation of Israel, mourning the death of Palestinian children, critiquing the concept of "Zionism," and commenting on the concept that the attack was "unprovoked"—as political advocacy for Palestinian rights rather than support for terrorist violence. Given these circumstances, even under Defendant's proposed exception, summary judgment would be inappropriate.

### 2.     Employer Policy under § 1101

Next, Defendant argues it does not have a policy that it used to control Plaintiff's political

activities under § 1101.[8] To prevail under this claim, Plaintiff must demonstrate that Defendant had a rule, regulation, or policy "[f]orbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office" and "[c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees." Cal. Lab. Code § 1101.

At issue here is Defendant's social media policy that prohibited "any conduct that adversely affects job performance or otherwise adversely affects Microchip employees" and "any post that subjects Microchip to the risk of having to legally defend any claim by a third party."[9] Plaintiff's theory is that, as applied to Plaintiff, this policy was used to control and direct his political commentary on the Israel-Palestine conflict on social media. *See Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 275485, at *13 (N.D. Cal. Jan. 27, 2021) (examining a broad policy that interferes with the opinions of employees in a manner that violates the Labor Code).

Defendant argues that this policy was not used to control or direct Plaintiff's "political" activity because Plaintiff's posts were not "political" in nature. However, recent federal court decisions applying both California and constitutional law confirm that commentary on social movements, international conflicts, and human rights issues—such as Plaintiff's posts here regarding the Israel-Palestine conflict—constitutes political activity. *See, e.g., Gay L. Students Assn. v. Pac. Tel. & Tel. Co.*, 24 Cal. 3d 458, 487 (1979) (defining political activity as "the espousal of a candidate or a cause, and some degree of action to promote the acceptance thereof by other persons"); *Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 965 (E.D. Cal. 2023) (Black Lives Matters movement is a political cause); *Hamilton*, 2021 WL 275485, at *13 (finding that the role of vaping products as alternatives to tobacco-based products is a political cause); *McCullough v. City & Cnty. of San Francisco*, No. 24-CV-03260-JCS, 2024 WL 4353061, at *5

---

[8] Defendant also moves more into arguing that there was no political motivation for Plaintiff's termination. The Court will discuss these arguments in the next section.
[9] Though Defendant has since offered alternative explanations for Plaintiff's termination during discovery, the evidence shows this was the reason provided to Plaintiff upon termination.

Case No.: 5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
8

(N.D. Cal. Sept. 30, 2024) (finding that plaintiff engaged in "constitutionally protected activity" when she participated in a pro-Palestine demonstration); *Koontz v. Watson*, 283 F. Supp. 3d 1007, 1022 (D. Kan. 2018) (finding that a boycott of Israel was political activity). Relevant here, Defendant's employees and Carr also believed the posts to be "political" at that time. Under these facts, a reasonable jury could find that Plaintiff's posts were political commentary on international affairs, and that by directing Plaintiff to delete the posts pursuant to its social media policy, Defendant used this policy to suppress Plaintiff's political commentary.

### 3. Viewpoint Discrimination under § 1102

Finally, Defendant argues Plaintiff has not produced any evidence that Defendant attempted to force to him to adopt or follow a particular political course of action based on a political motive—citing to the general rule that liability under § 1102 "is triggered only if an employer fires an employee based on a political motive." *Couch v. Morgan Stanley & Co. Inc.*, 656 F. App'x 841, 843 (9th Cir. 2016).

However, Plaintiff has presented evidence that could show Defendant was politically motivated to terminate Plaintiff based on his viewpoint. Most notably, Defendant's Human Resources Manager specifically communicated her issue with Plaintiff's political identity and views in an email to Carr, stating: "It's clear in my opinion that he is Muslim, I searched also and he has many post [sic] supporting or transmitting he is with the Palestinian people." The Human Resource Manager's email went on to list Plaintiff's posts, beginning with the post regarding three dead Palestinian children. The fact that Carr also testified that she supported Israel's bombing of Palestine and specifically took issue with this same post mourning deceased Palestinian children, among others, could demonstrate that Defendant's objection to Plaintiff's posts extended to his broader political advocacy for Palestinian rights. Defendant's executive leadership also promoted their own contrary political views on the Israel-Palestine conflict through company communications when Moorthy opined in a company email that "Israel's response . . . is justified and necessary" and that October 7 "must be responded to in whatever way Israel deems appropriate." Though Defendant has now offered alternative explanations for Plaintiff's

termination—arguing for example[10] that the posts reflect poor judgment and a lack of leadership qualities—there is no evidence that these justifications were considered when terminating Plaintiff. But further, even if there were, the evidence could support a finding that Defendant's opinion regarding Plaintiff's posts was still based on Defendant's disagreement with Plaintiff's viewpoint.

With this context in mind, a reasonable juror could perceive Defendant's directive—to delete not only the specific October 7 post but all "inappropriate/questionable content related to the recent Middle East conflict" and to "take the necessary steps to ensure no additional postings of this nature occur in the future"—as evidence that Defendant forced Plaintiff to follow a particular course of action based on a political motive.

\* \* \*

Accordingly, the Court finds genuine disputes of material fact prevent the Court from entering summary judgment in Defendant's favor on Plaintiff's claims under §§ 1101 and 1102 and **DENIES** Defendant's motion as to these claims.

### B.      Labor Code § 98.6

Moving to Plaintiff's next claim, § 98.6 essentially acts as the enforcement mechanism for violations of §§ 1101 and 1102, providing in relevant part that "[a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action . . . because the employee . . . engaged in any conduct delineated in . . . Chapter 5 (commencing with Section 1101) . . . . " Cal. Labor Code § 98.6. Defendant largely repeats arguments regarding the "offensive" nature of Plaintiff's posts. The Court rejects these arguments for the reasons discussed in Section III.A.1.

Defendant's additional arguments are likewise unavailing. Defendant cites to Plaintiffs managerial role to argue that § 98.6 does not provide the same level of protections to managers, but this distinction is not found anywhere in the code or cited case law. Similarly unpersuasive

---

[10] Defendant also summarily represents that Plaintiff was dishonest in the investigation of his posts but cites to no evidence.

Case No.:   5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
10

1   are Defendant's citations to public employment cases, as different standards apply to private and
2   public employees—government employees' speech rights are uniquely restricted, and the
3   *Pickering* framework has no application to Labor Code protections for private employees. *See*
4   *Hernandez v. City of Phoenix*, 43 F.4th 966, 979 (9th Cir. 2022). Defendant also unsuccessfully
5   argues that Plaintiff cannot establish his conduct occurred during nonworking hours away from
6   Defendant's premises, as required under this section, because internet posts can be viewed at any
7   time from any place. Defendant cites to *Okonowsky v. Garland*, 109 F.4th 1166, 1180, 1181 (9th
8   Cir. 2024), which noted that "even if discriminatory or intimidating conduct occurs wholly offsite,
9   it remains relevant to the extent it affects the employee's working environment," and "[s]ocial
10  media posts are permanently and infinitely viewable and re-viewable by any person with access to
11  the page or site on which the posts appear." But *Okonowsky* is inapplicable to the facts of this
12  case; the Ninth Circuit there addressed a Title VII workplace sexual harassment claim, not Labor
13  Code protections for off-duty political conduct.
14      The Court therefore finds genuine disputes of material fact also preclude summary
15  judgment on Plaintiff's claims under § 98.6 and **DENIES** Defendant's motion as to this claim.

### C.     FEHA § 12940

17  Under FEHA § 12940, employers are prohibited from retaliating against an employee for
18  complaints about race or national origin discrimination in the workplace. Cal. Gov. Code § 12940
19  et seq. Plaintiff has the initial burden of establishing a prima facie case of retaliation by showing
20  that: (1) he engaged in a protected activity; (2) he was discharged; and (3) there is a causal link
21  between the two. *Gonzales v. City of Martinez*, 638 F. Supp. 2d 1147, 1159 (N.D. Cal. 2009);
22  *Holmes v. Gen. Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 (1993).[11]
23      For this claim, Plaintiff argues that Defendant terminated Plaintiff in retaliation for his
24  October 10, 2023, email to Moorthy. Defendant argues that Plaintiff cannot show this email was

---

[11] Finding Plaintiff fails to meet his initial burden, the Court need not discuss the burden-shifting framework or Defendant's additional arguments regarding non-retaliatory motives for Plaintiff's termination.

Case No.: 5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
11

"protected activity" because it does not complain about discrimination in the workplace. The Court agrees.

After Moorthy sent out the new company-wide email offering sympathy for both Israeli and Palestinian civilians on October 10, Plaintiff responded with the following email:

> Dear Ganesh,
>
> Your update this morning is extremely crucial for employees who value human lives regardless of race and religion. Those of us who live in the West should be grateful for abundant access to clean water, food, and electricity. We are also blessed for the freedom of movement, safety, and relative security. Many communities around the world, Gazans included, are subjected to daily dehumanization. Every innocent life is sacred, and therefore should be protected.
>
> God Bless!
>
> Thank you immensely,
> Kamal Koraitem
> San Jose, California

Pl.'s Resp. to Fact No. 18.

Plaintiff's position is that "[t]his language plainly communicated Plaintiff's view that the original email had discriminated based on national origin by treating Palestinian lives as less worthy of sympathy than Israeli lives." Opp'n 23. In this way, Plaintiff contends his email constitutes "protected activity" for purposes of § 12940, because it "opposed national origin discrimination in the workplace." *Id.*

The Court finds Plaintiff's characterization of this email unsupported by the evidence. Though it is true that Plaintiff is not required to use "buzzwords" like "discrimination" in complaints under this section, *id.* at 23, Plaintiff still must use *some* language to communicate a complaint. While Plaintiff's email could be read to condemn discrimination in general, it contains no indicia of discrimination in the workplace or reference to the prior October 8 email that he argues constituted discrimination in the workplace.

As such, the Court finds Plaintiff failed to present evidence showing he engaged in "protected activity" under § 12940 and **GRANTS** Defendant's motion for summary judgment on this claim.

Case No.: 5:24-cv-00462-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.
12

United States District Court
Northern District of California

### D. Wrongful Termination in Violation of Public Policy

Finally, to state a claim for wrongful termination in violation of public policy, Plaintiff must show that his termination violated a fundamental public policy embodied in federal or state law. *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 71 (1998); *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999). Defendant's only argument here is that Plaintiff has not shown a violation of any state law, thus his wrongful termination claim relying on those state law violation claims fails as well. But for the reasons discussed above, the Court declines to enter summary judgment against Plaintiff on his claims under the Labor Code. For those same reasons, the Court finds Defendant's argument here unavailing as well.

Accordingly, the Court **DENIES** Defendant's motion for summary judgment on this claim.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's FEHA § 12940 claim and **DENIES** Defendant's motion as to Plaintiff's remaining claims.

**IT IS SO ORDERED.**

Dated: October 8, 2025

EDWARD J. DAVILA
United States District Judge